UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and ) <br> MONSANTO TECHNOLOGY LLC, ) <br> ) <br>    Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> ZEFERINO SAUCEDA, ) <br> ) <br>    Defendant. ) | CASE NO. |

**MEMORANDUM IN SUPPORT OF MOTION FOR
<u>EXPEDITED DISCOVERY AND ENTRY OF PROTECTIVE ORDER</u>**

<u>**INTRODUCTION**</u>

      Monsanto Company and Monsanto Technology LLC (hereinafter "Monsanto") seek expedited discovery solely to identify and preserve important physical evidence that may be destroyed by the upcoming inclement winter weather or because of the Defendant's farming practices. Specifically, Monsanto seeks to identify the scope of Defendant's use of Roundup Ready® and Bollgard® cotton, and to preserve physical evidence of the Defendant's crop residue as it currently exists in the fields. To accomplish this, Monsanto is requesting leave to propound a few narrowly tailored discovery requests aimed at identifying acreage and collecting samples from fields that were planted by Defendant or planted with seed transferred or sold by Defendant. Monsanto seeks to preserve this evidence from spoliation. This evidence can be preserved through a limited Protective Order that preserves the fields until the Defendant responds to the limited discovery sought by Monsanto. The discovery consists of four (4) interrogatories, one (1) request for production of documents, and two (2) requests for entry upon land, collectively attached hereto as Exhibit 1.

## BACKGROUND

Monsanto is engaged in, among other things, the business of manufacturing, developing, licensing and marketing agricultural products, including agricultural biotechnology. These business activities demand a substantial investment of time, money and manpower in the development, patenting, registration of trademark products and marketing of products.

With regard to the litigation at hand, Monsanto developed plant biotechnology with gene transfer that results in plants having resistance to glyphosate-based herbicides—such as Roundup Ultra®, Roundup UltraMAX®, Roundup WeatherMAX®, and Touchdown®. Monsanto also developed a separate biotechnology that results in plants which produce *Bacillus thuringiensis* (B*t*) insecticidal proteins that control some inspect species, including budworms, bollworms, and armyworms. This biotechnology has been utilized by Monsanto in cotton. The genetically improved cotton is marketed by Monsanto under several trade names, including Roundup Ready® cotton and Bollgard® cotton. Monsanto also licenses other seed companies to incorporate the Roundup Ready® and Bollgard® technology into their own seed lines and market Roundup Ready® and Bollgard® seed pursuant to Monsanto's limited use license. The technology is protected by several United States Patents, including U.S. Patent Nos. 5,352,605 and RE 39,247E. Copies of these patents are attached as Exhibits A and B to Monsanto's Complaint.

The advantage of Roundup Ready® seed is straightforward: a grower who plants Roundup Ready® seed can apply a glyphosate-based herbicide, such as Roundup UltraMax® or Roundup WeatherMax®, after the crop emerges from the soil (known as an "over-the-top" application), without damaging the crop. Without this biotechnology, it is not possible to apply glyphosate-based herbicides without causing severe crop damage. In short, Roundup Ready®

crops provide an improved method for weed control through genetic modification of the crop, resulting in savings to the grower in both time and expense.

The Bollgard® trait provides insect protection to cotton plants.  Specifically, cotton plants produced from seed containing the Bollgard® trait produce a B*t* protein.  The protein is toxic to the larval stages of many lepidopteran pests of cotton.  This improved method of insect control through genetic modification of the crop results in grower cost savings.

Monsanto limits the use of its Roundup Ready® and Bollgard® technology via a limited use license (also referred to as a Technology Agreement), which is made available to farmers at the retail level.[1]  These restrictions, in part, state that a purchaser may only use the seed to produce a "single commercial crop."  The purchaser may not resell or supply the seeds to any other person or entity for the purpose of planting or save any of the seed produced from a crop for the purpose of planting a subsequent crop.  In sum, the license prohibits the "saving" of seed for replanting as each new generation of seed would contain Monsanto's patented technology.

Monsanto filed this action because an investigation of the Defendant's farming operations indicated that the Defendant planted his cotton crop with saved Roundup Ready® and/or Bollgard® seed.  The investigation also revealed that Defendant transferred or sold seed containing Roundup Ready® and/or Bollgard® technology.  Planting, transferring, or selling saved Roundup Ready® or Bollgard® seed is an infringement of Monsanto's patent rights.  *See, e.g.*, *Monsanto v. Scruggs*, 459 F.3d 1328, 1334-36 (Fed. Cir. 2006); *Monsanto Co. v. Strickland*, 604 F.Supp.2d 805 (D.S.C. 2009). Monsanto sells Roundup Ready® and Bollgard® seed pursuant to a limited use license agreement which limits use of the seed to the production of a

---

[1] Seed companies who wish to use Monsanto's patented biotechnology in their own proprietary seed varieties entered into separate licensing agreements with Monsanto, which restrict the use of the patented invention by the seed companies, and subsequent purchasers and growers.

single commercial crop in a single growing season—the subsequent planting of harvested or saved seed is expressly prohibited. Likewise, selling or transferring harvested or saved seed for the purpose of planting a subsequent crop is expressly prohibited.

Although the Defendant has already harvested his 2010 cotton crop, viable samples of the crops remain in the fields. However, the upcoming harsh winter weather—including the combination of heat and moisture followed by freezing rains—may destroy this evidence through decomposition. Accordingly, the normal delays associated with discovery are ill-suited to preserve this evidence. The inspection and sampling can be completed rapidly, probably within one or two days, and should impose no burden on the Defendant's farming operation.[2]

## CIRCUMSTANCES OF THE CASE

In 2006, Monsanto received information alleging that Defendant sold saved Roundup Ready Ready® and/or Bollgard® cotton seed to a grower for planting. Because such an act would violate Monsanto's patent rights, Monsanto investigated the allegation. *See* Declaration of Terry Blackford, "Blackford Decl." ¶ 3, attached hereto as Exhibit 2.

On December 13, 2006, investigator Terry Blackford interviewed Defendant at his place of employment, West Texas Seed and Delinting, in Slaton, Texas. Blackford Decl. ¶ 4. Defendant admitted that he sold saved cotton seed. Blackford Decl. ¶ 5. Defendant stated that he obtained the seed he sold, and the seed he planted, from West Texas Seed and Delinting. Blackford Decl. ¶ 5. Defendant explained that when growers wish to destroy treated cotton seed that is stored at West Texas Seed and Delinting, the owner allows him to take the seed for use as

---

[2] Monsanto's inspection team can inspect and sample approximately 500 or more acres per day depending on the location of the fields relative to each other, the size, and configuration of the field, and the condition of the field, i.e. dry or muddy. A copy of the inspection team's standard operating procedure is attached as Exhibit B to Plaintiffs' First Set of Interrogatories, Request for Production and Requests for Entry Upon Land, which are attached hereto as Exhibit 1.

livestock feed.  Blackford Decl. ¶ 6.  However, if the germination of the cotton seed is good, Defendant stated that he plants or sells the seed to growers.  Blackford Decl. ¶ 6.  With Defendant's permission, investigator Blackford obtained samples of cotton seed from Defendant's barn and fields and tested the samples with a field strip test.  Blackford Decl. ¶¶ 7-8.  The samples tested positive tested for the CP4 gene, associated with Monsanto's patented Roundup Ready® trait.  Blackford Decl. ¶ 8.

In the summer of 2010, investigators observed Defendant planting cotton seed from white seed bags obtained from West Texas Seed and Delinting.  Blackford Decl. ¶9.  During planting, several cotton seeds fell from the planter onto the public right-of-way.  Blackford Decl. ¶ 10.  Investigators collected the cotton seed from the public right-of-way and tested it with a field strip test.  Blackford Decl. ¶ 11.   The samples tested positive for the CP4 gene, associated with Monsanto's patented Roundup Ready® trait.  Blackford Decl. ¶ 11.  Therefore, investigator Blackford, once again, interviewed Defendant.  Blackford Decl. ¶ 12.  Defendant denied planting saved Roundup Ready® seed, but admitted that he had several pallets of treated cotton seed in his barn.  Blackford Decl. ¶ 12.  Defendant refused to allow sampling of his fields or his stored seed.  Blackford Decl. ¶ 12.

In light of this evidence, Monsanto believes that Defendant planted his cotton crop with saved Roundup Ready® and/or Bollgard® seed, in violation of Monsanto's patent rights.  Based on interviews conducted during the course of the investigation, Monsanto also discovered that Defendant violated Monsanto's patent rights by transferring or selling cotton seed containing Monsanto's patented biotechnology.

At least a portion of the Defendant's fields have not been tilled.  Thus, crop residue remains on the Defendant's 2010 fields.  Given the upcoming harsh winter weather and

Defendant's farming practices, access to this evidence may be limited. If this crop residue is destroyed, the parties may lose important evidence regarding the Defendant's alleged violations. To resolve these potentially dispositive issues, expedited discovery is appropriate and necessary.

## LAW AND ARGUMENT

It is important that Monsanto be able to confirm the scope of the Defendant's infringement before the evidence is either destroyed by inclement weather or because of Defendant's farming practices. The normal delays built into the Federal Rules of Civil Procedure for responding to a Complaint and permitting parties to seek discovery are ill suited to protect vital evidence here. Under Federal Rule of Civil Procedure 12(a)(1), the Defendant must answer Monsanto's Complaint within twenty days after being served and perhaps longer if he requests an extension. Assuming that the parties are able to arrange a conference pursuant to Rule 26(f) immediately after service of the Answer and Monsanto propounds discovery just as quickly, the Defendant will have thirty (30) days to respond to those requests. *See* FED. R. CIV. P. 33(b)(3) and 34(b). If the Defendant then poses objections to some or all of the discovery, or otherwise fails to give adequate responses, Monsanto may face the prospect of filing a Motion to Compel Discovery Responses, attending a hearing and securing an Order. By that point, the harsh winter weather and the Defendant's farming practices may have destroyed important evidence regarding the Defendant's alleged violations.

Monsanto has had several cases with factual situations similar, if not identical, to the current circumstances. As a result, Monsanto has asked several courts to grant expedited discovery in order to prevent the spoliation of evidence. Many federal courts, including this

Court, have recognized the need to preserve evidence and have granted Monsanto's requests for expedited discovery.[3]

## A. THE REQUEST FOR EXPEDITED DISCOVERY

District courts are granted much discretion under Rule 26 to control and manage discovery. *See*, 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, §2036 at 488 (2d Ed. 1994) (Rule 26 permits a district court the discretion to fashion appropriate discovery limitations). This case represents an appropriate circumstance where the Court should exercise its discretion to modify discovery parameters. The Defendant, either intentionally or unintentionally, will have opportunity to destroy or otherwise dispose of any crop residue or stored seed, hampering or preventing discovery of the full scope of the infringement. Under Rule 33(b)(3) and Rule 34(b), the Court is empowered with the discretion to order a shorter or longer time than thirty (30) days in which to respond to Interrogatories and Requests for Entry Upon Land, and under Rule 26(c), the Court is specifically empowered to specify the time at which discovery pleadings are to be answered. *See*, 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, §2038 at 506 (2d Ed. 1994); *see also*, FED. R. CIV. P. 26(d) (giving district courts discretion to enter and order regarding timing and sequencing of discovery); and 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, §2047 at 593 (2d ed. 1994) (Rule 26(d) makes explicit the discretion afforded a district court in Rule 26(c)(2)).

---

[3] *See, e.g.* Orders granting same in:
    *Monsanto v. Woods*, USDC, Eastern District of Missouri, 4:08-cv-00137; *Monsanto v. Foster*, USDC, Eastern District of Missouri, 4:07-cv-0833; *Monsanto v. Rogers,* USDC, District of South Carolina; *Monsanto v. Hicks,* USDC, Northern District of Alabama; *Monsanto v. Fitts*, USDC, Eastern District of Arkansas; *Monsanto v. Rogge,* USDC, District of Nebraska; *Monsanto v. Tuggle,* USDC, Western District of Missouri; *Monsanto v. Gainey,* USDC, Middle District of North Carolina; *Monsanto v. Wood,* USDC, Western District of Tennessee; *Monsanto v. Southfork Farms*, USDC Western District of Tennessee; *Monsanto v. Bowman*, USDC, Southern District of Indiana; *Monsanto v. Strickland*, USDC, District of South Carolina.

## B. THE PROTECTIVE ORDER

Monsanto seeks a protective order in this case, pursuant to Rule 26(c), preventing the Defendant from destroying the evidence (inadvertently or not) before Monsanto can inspect and sample the fields upon which the Defendant harvested cotton. More specifically, Monsanto seeks an Order prohibiting the Defendant from conducting any farming operation that would disturb the crop residue remaining in the fields until after Monsanto has completed inspection and sampling. A proposed order is attached to Monsanto's Motion for Leave to Serve Expedited Discovery and Entry of a Protective Order as Exhibit 2.

District courts are granted much discretion under Rule 26 to control and manage discovery. With respect to the preservation of evidence, the breadth of a district court's discretion will permit it to fashion a protective order which will prevent spoliation of evidence. *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir. 1992) (court upheld the imposition of sanctions for the violation of a protective order designed to preserve evidence). Without such an order from this Court, the Defendant could destroy the crop residue necessary for Monsanto to prove the scope of Defendant's infringement, prejudicing plaintiff's case. *See*, 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2036 at 488 (2d ed. 1994) (Rule 26 permits a district court discretion to fashion appropriate discovery limitations).

In sum, Monsanto believes that this case presents an appropriate circumstance under which the Court is empowered to require the Defendant to expeditiously respond to limited discovery and to maintain the evidence so that it can be sampled and tested.

- 9 -

**Respectfully submitted,**

THOMPSON COBURN LLP

By  /s/ Daniel C. Cox
    Daniel C. Cox, Mo. E.D. Bar #57781
    Jeffrey A. Masson, Mo. E.D. Bar #5239927
    One US Bank Plaza
    St. Louis, Missouri  63101
    314-552-6000
    FAX 314-552-7000

*Attorneys for Plaintiffs Monsanto Company and Monsanto Technology LLC*

## **CERTIFICATE OF SERVICE**

      I certify that a copy of the foregoing will be personally served on the Defendant with Monsanto's Complaint.

Zeferino Sauceda
15412 FM 400
Slaton, TX 79364

                                            /s/ Daniel C. Cox